UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| LEON SULLIVAN, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | CIVIL NO. 1:04-CV-307 |
| FORT WAYNE FOUNDRY CORPORATION, PONTIAC DIVISION and GMP LOCAL 285 | ) ) ) ) | |
| Defendant. | ) ) | |

## OPINION AND ORDER

Before the court are two motions for summary judgment, one filed by Defendants Fort Wayne Foundry Corp, Pontiac Division ("the Foundry") and the other filed by Glass, Molders, Pottery, Plastics and Allied Workers International Union, Local 285 ("the Union"). Plaintiff, Leon Sullivan, ("Sullivan") proceeding *pro se,* did not respond despite receiving the notice required by *Lewis v. Faulkner* and L.R. 56.1(e). For the following reasons, both motions for summary judgment will be GRANTED.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.* The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th

1

Cir. 1994). If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770. A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true," as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.* However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771.

Mindful of these standards, the court turns now to an examination of the factual record.

### **FACTUAL BACKGROUND**[1]

The undisputed material facts are as follows:

The Foundry operates three aluminum foundries and a machining division producing engine components for General Motors. The Union and its parent International Union are the collective bargaining representatives for the Foundry's production and maintenance employees. On April 5, 2000, the Foundry hired Sullivan in its union shop.. Throughout his employment with the Foundry, the Union represented plaintiff pursuant to the terms of a written Collective Bargaining Agreement ("the CBA"). The Foundry terminated Sullivan on February 11, 2004 for excessive absenteeism.

---

[1]Preliminarily, the court notes that despite being advised of his obligation to respond to the present motions, Plaintiff has altogether failed to do so. Northern District of Indiana L.R. 56.1 provides:

> (b) In determining the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion, as supported by the depositions, discovery responses, affidavits and other admissible evidence on file.

Sullivan failed to oppose the facts claimed by the Defendants with any admissible evidence or sworn statements. Pursuant to the above local rule, the court shall construe the Defendants' versions of the facts as uncontroverted for purposes of summary judgment.

Thereafter, Sullivan filed the instant lawsuit claiming the Foundry discriminated against him based upon his race and retaliated against him in violation of 42 U.S.C. §1981.² Sullivan also asserts a claim pursuant to the Family Medical Leave Act of 1993, 29 U.S.C. §2601, *et seq.* Sullivan further contends that the Foundry breached the CBA by terminating him without just cause and that the Union breached its duty of fair representation in violation of §301 of the Labor Management Relations Act, ("LMRA").

Sullivan is a black male suffering from severe asthma. Sullivan testified in his deposition that he suffered from asthma beginning approximately two years before the events relating to this lawsuit occurred. Although he suffered from asthma, Sullivan stated that his doctor did not place him on any work restrictions due to this medical condition. (Dep. at 36). His doctor did, however, recommend that he work in an environment with less dust. (Dep. at 157).³

Sullivan held various positions within the Foundry, all of which were governed by the CBA. Article 19, §1 of the CBA covers attendance and discipline. Pursuant to this Article, points are assessed for each absence; more than six points per rolling 90 day period or 22 or more points in a rolling calendar year will result in discipline. The first offense produces a verbal warning, the second offense a written warning, the third offense a final written warning, and the fourth offense

---

²Although Sullivan's Charge mentioned disability discrimination, the Complaint is silent on this topic and does not seek recovery under the Americans with Disabilities Act ("ADA").

³The defendants have submitted portions of Sulivan's deposition as part of the summary judgment record in this case. Sullivan's deposition is, to say the least, a mess. Counsel and Sullivan frequently attempt to speak at the same time and talk over each other. As a result, it is unclear in some cases what question is being asked and what answer is being provided. Further, the answers Sullivan provides seem internally inconsistent and are generally unhelpful to the court in determining the relevant and material facts of this case. The unreliability of the deposition testimony is compounded by the fact that the court does not have in its possession the entirety of the deposition but only the portions defendants rely upon (a practice that is consistent with this court's local rules) in their Statement of Material Facts.

results in discharge.

Because of his asthmatic condition, which the Foundry admits constitutes a serious health condition for purposes of the FMLA (see Response to Charge of Discrimination dated December 2, 2003), the Foundry provided Sullivan with intermittent FMLA-qualifying leave beginning on January 6, 2003. At that time, he was entitled to excused absences for, at most, 576 hours for this FMLA qualifying condition.

David Lorey ("Lorey") is the Human Resource Director at the Foundry and is the individual charged with the responsibility of maintaining personnel records, overseeing and directing formulation and administration of employment policies involving all aspects of the terms and conditions of employment established for both union and non-union employees. In December 2003, the Human Resources Manager at the Foundry left employment there and, as a result, Lorey had to take over the managerial responsibilities at the Pontiac Division (as well as those of the Director) until a replacement was hired. One of his tasks was reviewing the status of FMLA leaves, including leave granted to Sullivan. Lorey determined that while Sullivan was eligible for 576 hours of FMLA, he had actually been excused for 648 hours of work since the date of his FMLA leave approval. Despite receiving more leave than he was entitled, the Foundry did not penalize Sullivan for the additional 72 hours of leave he had received. Rather, the Foundry considered the additional excused absences as being an "administrative error" on its part.

Once this administrative error was discovered, however, Lorey notified Sullivan of the status of his attendance. On January 4, 2004, Lorey drafted a letter to Sullivan to alert him to the fact that

4

he did not have any additional FMLA leave available to him.[4] In addition, Lorey's letter advised Sullivan that any additional leave was required to be certified or recertified by a physician, in accordance with company policy and the FMLA. Lorey directed Sullivan's supervisor to personally deliver this letter to Sullivan. A copy of the letter was also sent to the Union.

The following day, Sullivan met with Lorey to discuss the letter.[5] During the course of that meeting, Lorey furnished to Sullivan a copy of his 2003 attendance calendar on which Lorey had highlighted the absences which had been excused under his FMLA leave. According to Lorey, he thoroughly reviewed the information with Sullivan because Sullivan was "always pushing the limit on attendance points" and he did not want Sullivan to believe that he could miss a day "in the mistaken belief that he could cover that absence with an FMLA day." (Aff. ¶20). Lorey further advised Sullivan that he could not secure additional FMLA leave until April 18, 2004 and that he would have to have any further leave certified or recertified. Sullivan was also warned by Union officers of his attendance problems and that these problems could lead to termination. (Sullivan Dep. at pp. 85-86, 131, 164-165, 169-171).

On January 19, 2004, Dawn Heiges ("Heiges") became the new Human Resources Manager at the Pontiac Division. Because of Lorey's concerns about Sullivan's attendance practices, he reviewed Sullivan's status with Heiges. In addition, Lorey asked Union representatives to make sure

---

[4]Actually, Sullivan was advised that he was not entitled to any more FMLA leave until January 30, 2004, and then only one day. He was eligible for recertification in April 2004.

[5]At points in his deposition, Sullivan appears to dispute that he had a meeting with Lorey regarding his attendance. But, he changes his position throughout the deposition on this point. The same is true with regard to whether Union officers discussed Sullivan's attendance record with him. At times, he admits that this was the case and other times he contradicts this position by saying he was aware that his FMLA leave had expired. Sullivan then goes on in his deposition to explain that he did not understand how the FMLA works and that he believed he was entitled to a new 12 weeks of leave beginning on January 1, 2004.

that Sullivan understood his status with respect to FMLA leave. (Aff. ¶23).

Subsequently, Sullivan continued to miss work. On January 30, 2004, Sullivan was issued a disciplinary notification for his absenteeism. This was Sullivan's second written warning which could have warranted suspension. However, after discussions with the Union, the Foundry agreed to reduce that disciplinary notification to a first written warning. At that time, Sullivan was well aware that his attendance points were jeopardizing his position at the Foundry.

On February 5, 2004, Sullivan was issued another disciplinary notification for absenteeism. That disciplinary notification, consistent with the prior agreement with the Union, was recorded as a second and final written warning. Sullivan was counseled about his attendance point total, that he could not obtain additional FMLA leave until April 18, 2004, and warned that if he missed any additional work, he would be terminated.

Undeterred by the above warnings, Sullivan earned another disciplinary notification just four days later when he called off work. Consistent with what Sullivan had been previously told, this notification provided for Sullivan's immediate termination. Sullivan was notified of his termination when he attempted to report to work on February 11, 2004.

Thereafter, the Union intervened by filing a timely grievance on February 12, 2004. The Foundry refused to reinstate Sullivan due in part to his history of absenteeism and, in part, to a history of unacceptable performance. While employed at the Foundry, Sullivan received numerous disciplinary notices for non-absentee related offenses such as leaving his work station without permission, failing to follow instructions, and interfering with plant qualify, safety, or efficiency. (Foundry's *Position Statement regarding Charge of Discrimination*, p. 1). Nevertheless, the Union grieved his termination through three steps of the negotiated procedure contained in the CBA all to

6

no avail. Pursuant to the CBA, the next step was arbitration. The Union, through its Executive Officer Rick Vitatoe ("Vitatoe"), determined at that point that its probability of success during arbitration was limited and it withdrew the grievance. This decision by Union officials was made after a full and complete investigation of the facts and did not reflect animus toward the plaintiff. In fact, Vitatoe did not know Sullivan personally prior to the filing of the grievance and became acquainted with Sullivan only through the grievance process.

**Sullivan's Charge of Discrimination**

On October 28, 2003, nearly three and a half months prior to his termination, Sullivan filed a Charge of Discrimination ("the Charge") with the Metropolitan Human Relations Commission ("METRO") wherein he stated that the Foundry was discriminating against him based upon race, disability and retaliation. Prior to a determination being made from METRO, Sullivan filed the instant lawsuit, through counsel, wherein he claimed race discrimination, retaliation, an FMLA claim against the Foundry as well as claims against the Union under the LMRA. In both his Charge and his Complaint alleges that the Foundry provides FMLA leave pursuant to its policies to its white employees but not to its black employees and that such a dividing line is a violation of both the FMLA and 42 U.S.C. §1981. Against the Union, the Complaint alleges that the Union's failure to arbitrate his grievance violated the Union's duty of fair representation.

Based on the above facts, Defendants move for summary judgment on all claims.

## DISCUSSION

**Sullivan's Claims of Discrimination and the FMLA**

As noted above, Sullivan has made claims against the Foundry of race discrimination and retaliation pursuant to 42 U.S.C. §1981 and a claim under the FMLA.

7

Claims of race discrimination and retaliation under §1981 are examined under the same methodology as that employed in Title VII cases. Under that methodology, to survive summary judgment in a discrimination case, a plaintiff must raise an inference of discrimination through one of the several evidentiary paths identified in the case law. *See generally Cardoso v. Robert Bosch Corp.*, 427 F.3d 429 (7th Cir. 2005). Given the undisputed material facts of this case, there is no need to dwell long on this claim. Sullivan admitted in his deposition that he was not alleging race discrimination and that race was not an element of his case:

> Q: And you say you're not basing your complaint upon discrimination based on race?
> A: No.
> Q: Race is not a factor in this case then?
> A: No.

(Sullivan Dep. at 161; see also Sullivan Dep. at 156: "I wasn't discriminated against about black and white, if you're saying that, no."). Therefore, the Foundry's Motion for Summary Judgment is GRANTED as to the claim of race discrimination.

As for Sullivan's claim of retaliation, it fares no better. Unlawful retaliation occurs when an employer takes an adverse employment action against an employee for opposing impermissible discrimination. *Fine v. Ryan International Airlines,* 305 F.3d 746, 751 (7th Cir.2002) (citing 42 U.S.C. § 2000e-3).[6] While the record here does demonstrate that Sullivan filed a Charge with

---

[6]A plaintiff has two means of proving retaliation: the "direct method" and the "indirect method." *Logan v. Kautex Textron N.A.,* 259 F.3d 635, 638-39 (7th Cir.2001) (citing *Troupe v. May Dep't Stores Co.,* 20 F.3d 734, 736 (7th Cir.1994)). Under the direct method, there are two types of permissible evidence. First, there is direct evidence; i.e., evidence that, if believed by the trier of fact, would prove the fact in question "without reliance on inference or presumption." *Walker v. Glickman,* 241 F.3d 884, 888 (7th Cir.2001) (quoting *Miller v. Borden, Inc.,* 168 F.3d 308, 312 (7th Cir.1999)). Direct evidence "essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus." *Radue v. Kimberly-Clark Corp.,* 219 F.3d 612, 616 (7th Cir.2000). The second type of evidence permitted under the direct method is circumstantial evidence; i.e., evidence that allows a jury to infer intentional discrimination by the decisionmaker. *Gorence v. Eagle Food Ctrs., Inc.,* 242 F.3d 759, 762

METRO three months prior to his termination and that he suffered an adverse employment action a few months afterwards, there is simply no evidence in this record which lends itself to the conclusion that Sullivan's termination occurred in retaliation for his filing of the Charge. There is certainly no direct evidence of retaliation and but for the facts above, there is no indirect evidence of retaliation either. Rather, all of the evidence points to Sullivan's absenteeism as the reason for his termination. Having not called this evidence into doubt with any admissible evidence of his own, Sullivan simply cannot prevail on this claim. The Foundry's Motion for Summary Judgment is GRANTED.

This leaves the claim under the FMLA. The FMLA creates two interrelated, substantive employee rights: first, an eligible employee has a right to twelve weeks of unpaid leave during any twelve-month period for a serious health condition that renders the employee unable to perform his job responsibilities and functions, and second, the employee has a right to return to his or her job or an equivalent job after using protected leave. 29 U.S.C. §§ 2612(a), 2614(a); *Ragsdale v. Wolverine World Wide, Inc.* 535 U.S. 81, 86 (2002). Congress further made it unlawful for an employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by the Act, 29 U.S.C. § 2615(a)(2), or to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the Act. 29 U.S.C. § 2615(a)(1). The regulations explain that the first prohibition above encompasses an employer's consideration

---

(7th Cir.2001); *Chiaramonte v. Fashion Bed Group, Inc.,* 129 F.3d 391, 396 (7th Cir.1997). There is also a third evidentiary route, a reformulation of the familiar *McDonnell-Douglas* burden shifting approach. Under this method, a plaintiff must show that after filing the Charge only he, and not any similarly situated employee who did not file a charge, was subjected to an adverse employment action even though he was performing his job in a satisfactory manner. If the defendant presents no evidence in response, the plaintiff is entitled to summary judgment. If the defendant presents unrebutted evidence of a noninvidious reason for the adverse action, he is entitled to summary judgment. Otherwise there must be a trial.

9

of an employee's use of FMLA-covered leave in making adverse employment decisions:

> [E]mployers *cannot use the taking of FMLA leave as a negative factor in employment actions,* such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under "no fault" attendance policies.

29 C.F.R. § 825.220(c) (emphasis added).[7] If an employer interferes with the employee's right to the leave, the deprivation of the right is a violation of the FMLA, regardless of the employer's intent. *Smith v. Diffee Ford-Lincoln-Mercury,* 298 F.3d 955, 960 (10th Cir.2002), *citing King v. Preferred Tech. Group,* 166 F.3d 887, 891 (7th Cir.1999).

According to his Complaint, Sullivan first contends that he was not provided leave to which he was entitled and second, that by giving him more FMLA leave than he was entitled to take, the Foundry is now estopped from claiming that his FMLA leave had expired.

As with his other claims, Sullivan's FMLA claim suffers from a major evidentiary deficiency; Sullivan has not demonstrated any entitlement to FMLA leave for the time period that lead to his termination. Minimally, a plaintiff asserting an FMLA "interference" claim must establish by a preponderance of the evidence is that he was an eligible employee entitled to take leave under the FMLA and the Defendant denied him FMLA benefits to which he was entitled or otherwise interfered with his FMLA rights. *See Hoge,* 384 F.3d at 244. *See also Harcourt v. Cincinnati Bell Telephone Co.,*--F.Supp.2d--, 2005 WL 2000666, at *5 (S.D.Ohio Aug.18, 2005);

---

[7]Congress authorized the Department of Labor to promulgate regulations implementing the FMLA. 29 U.S.C. § 2654. The department's reasonable interpretations of the statute are therefore entitled to deference under *Chevron USA Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 843-44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *See Ninilchik Traditional Council v. United States,* 227 F.3d 1186, 1191 (9th Cir.2000) (agency's interpretation of statute pursuant to statutory delegation of authority is entitled to *Chevron* deference); *Duckworth v. Pratt & Whitney, Inc.,* 152 F.3d 1, 5 (1st Cir.1998) (Labor Department's FMLA regulations were promulgated pursuant to statutory delegation and are entitled to *Chevron* deference).

*Sorrell v. Rinker Materials Corp.,* 395 F.3d 332, 335 (6th Cir.2005); *Cavin v. Honda of Am. Mfg., Inc.,* 346 F.3d 713, 719 (6th Cir.2003); *Geromanos v. Columbia Univ.,* 322 F.Supp.2d 420, 427 (S.D.N.Y.2004). Here, the record reflects that Sullivan exhausted all of his prior FMLA leave and could not seek new FMLA leave until April 2004. In the meantime, despite warnings that his absenteeism was excessive, Sullivan continued to miss work and ultimately, was terminated pursuant to the Foundry's policies and the CBA.

Nevertheless, Sullivan's Complaint alleges that because the Foundry erred in its administrative calculation of his FMLA leave and provided him with 72 more hours of FMLA leave than he was entitled to receive, it is now equitably estopped from asserting that he was not entitled to FMLA leave for those 72 hours or for the hours taken thereafter. In essence, Sullivan's position is that the miscalculation of his FMLA leave time by the Foundry hours prevents it from correcting the error at his expense.

The concept of equitable estoppel in the context of FMLA leave has been applied in numerous cases where the employer's conduct has caused an employee to justifiably and detrimentally rely on the employer's representation as to the availability of FMLA leave. In *Dormeyer v. Comerica Bank-Illinois*, 223 F.3d 579, 581-82 (7th Cir.2000), for instance, the Seventh Circuit suggested that where it is clear an employee was misled by her employer's silence as to her entitlement to FMLA leave, the employer may be estopped from pleading ineligibility as a defense to the employee's FMLA claims. *See also Kosakow v. New Rochelle Radiology Assocs.*, 274 F.3d 706, 724-25 (2d Cir.2001) (affirming the district court's decision to estop an employer from asserting an affirmative defense challenging an employee's FMLA eligibility when the employer's unintentional misleading behavior caused the employee to justifiably and detrimentally rely on the

FMLA leave); *see also Woodford v. Community Action of Greene County, Inc.,* 268 F.3d 51, 57 (2d Cir.2001) (authorizing equitable estoppel where an employer initially provided notice of eligibility for leave and later seeks to challenge it), *Duty v. Norton-Alcoa Proppants*, 293 F.3d 481 (8th Cir.2002)(affirming a district court's application of equitable estoppel in an FMLA case and collecting authorities).

The Foundry is no stranger to this argument. Recently in *Allen v. Fort Wayne Foundry Corp.* 2005 WL 2347266, *10 (N.D.Ind. 2005), Magistrate Judge Cosbey of this court concluded that equitable estoppel should be applied to prevent the Foundry from denying an employee's eligibility for FMLA leave as an affirmative defense to FMLA liability. In that case, the Foundry granted in writing the employee's intermittent FMLA leave request not once, but twice: first for a month, then for an additional twelve months and then proceeded to record twenty-four absences in the employee's personnel record as excused FMLA leave. After the employee filed suit challenging his termination under the FMLA, the Foundry asserted the affirmative defense that he was ineligible for FMLA leave, despite having provided written approval of his request for leave. Calling this defense "appearing at times almost disingenuous," the court concluded that "this is an appropriate case in which to apply the doctrine of equitable estoppel with respect to [the Foundry's] claim that Allen was ineligible for FMLA benefits...as [the Foundry's] conduct clearly induced detrimental reliance. *Allen*, 2005 WL 2347266, *10.

The same conclusion simply cannot be reached in this case. While the Foundry did provide Sullivan with 72 hours more leave than he was entitled, Sullivan was not penalized for taking that additional leave time. Rather, the undisputed record demonstrates that the Foundry and the Union brought the error specifically to Sullivan's attention, told him the status of his remaining FMLA

leave, and counseled him that he would accrue points under the CBA for future absences unless he recertified his FMLA leave. The Foundry further advised Sullivan that he was not eligible for recertification of his prior FMLA leave period until April 2004. Given these facts, it is clear that Sullivan was placed on notice that his FMLA leave period had expired and thus, there was no detrimental reliance on the Foundry's miscalculation of his original FMLA leave once he was told by the Foundry of his FMLA status. Accordingly, this is not a case where the doctrine of equitable estoppel should come into play. The Foundry's Motion for Summary Judgment is therefore GRANTED as to the FMLA claims.[8]

**Breach of Contract and Breach of the Duty of Fair Representation[9]**

Sullivan has also brought claims against the Union claiming that it breached its duty of fair

---

[8]It is unclear whether Sullivan is making a claim that the Foundry retaliated against him for taking FMLA leave. If he is, it clearly fails. An FMLA retaliation claim, like other discrimination claims, may be argued under the indirect method of proof follows the familiar *McDonnell Douglas* model as clarified by the Seventh Circuit in *Stone v. City of Indianapolis Pub. Util. Div.,* 281 F.3d 641, 644 (7th Cir.2002). *See Buie v. Quad/Graphics, Inc.,* 366 F.3d 496, 503 (7th Cir.2004); *see generally McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). First, the plaintiff must establish a *prima facie* case by showing that (1) after engaging in protected activity; (2) only he, and not any similarly situated employee who did not engage in the protected activity; (3) was subjected to an adverse employment action; (4) even though he was performing his job in a satisfactory manner. *Stone,* 281 F.3d at 644; *Buie,* 366 F.3d at 503. If this case is made, the defendant must proffer a legitimate, nondiscriminatory reason for the adverse employment action. *Stone,* 281 F.3d at 644; *Buie,* 366 F.3d at 503. The burden then falls on the plaintiff to show that the proffered reason is merely pretextual. *Stone,* 281 F.3d at 644; *Buie,* 366 F.3d at 503.
Sullivan has presented no evidence that someone similar in all respects to him but outside the protected class was treated more favorably nor has he demonstrated that he was performing his job satisfactorily. In fact, the record reveals that Sullivan was absent from work often and, when he was there, he received disciplinary notices for his on the job conduct. More importantly, there is simply nothing in the record to link his taking of FMLA leave with his termination or to rebut the Foundry's legitimate reason for his termination.

[9]The Union filed a well-drafted, detailed, and extensive brief in support of its position. This brief examined the issues presented here in far greater detail than the court has undertaken herein. Given the sparsity of the record in support of the plaintiff and the fact that there is simply nothing from which to conclude that the Union breached any duty owed to the plaintiff, it is not necessary for this court to address all of the alternative arguments raised by the Union despite their excellent presentation..

representation by (1) not grieving his termination; (2) failing to communicate with him regarding his desire to grieve and arbitrate his termination; (3) failing to take the grievance to arbitration; and (4) "otherwise failing to cary out its duties to represent the Plaintiff." (Complaint, ¶8). As part of this claim, Sullivan also alleges that the Foundry violated the CBA for terminating him without just cause.

In order for Sullivan to prevail in this "hybrid"[10] type of an action, he must have a meritorious claim against both the union and the employer; the claims are interlocking in the sense that neither is viable if the other fails. *Crider v. Spectrulite Consortium, Inc.,* 130 F.3d 1238, 1241 (7th Cir.1997). Thus, here, the Union moved for summary judgment on the ground that it did not breach the duty of fair representation that it owed to Sullivan as a union member– without a valid claim for breach of the duty of fair representation, Sullivan cannot proceed against the Foundry. *Id.* at 1241, 1243; *McKelvin v. E.J. Brach Corp.,* 124 F.3d 864, 869 (7th Cir.1997).

As the exclusive bargaining representative of the Foundry employees, the Union has an implied statutory duty to fairly represent all of those employees, both in its collective bargaining and in its enforcement of the resulting collective bargaining agreement." *Vaca v. Sipes,* 386 U.S. 171, 177 (1967). "Under this doctrine, the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, and to exercise its discretion with complete good

---

[10]A so-called "hybrid" action is a section 301/fair representation action against the employer and its union pursuant to section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185, and sections 8(b) and 9(a) of the National Labor Relations Act, 29 U.S.C. §§ 158(b), 159(a). *See generally DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 163-65, 103 S.Ct. 2281, 2290-91, 76 L.Ed.2d 476 (1983); *Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6,* 493 U.S. 67, 86-87, 110 S.Ct. 424, 436, 107 L.Ed.2d 388 (1989).

faith and honesty, and to avoid arbitrary conduct." *Id.* This duty of fair representation is of major importance, but a breach occurs "only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Id.,* at 190, 87 S.Ct., at 916. The courts have in general assumed that mere negligence, even in the enforcement of a collective-bargaining agreement, would not state a claim for breach of the duty of fair representation and this view has been adopted by the Supreme Court. *United Steelworkers of America, AFL-CIO-CLC v. Rawson,* 495 U.S. 362, 372-373 (1990).

In determining whether a union breached its duty, each of the possibilities (i.e., arbitrariness, discrimination, or bad faith) must be considered separately in determining whether or not a breach has been established. See *Neal v. Newspaper Holdings, Inc*. 349 F.3d 363, 369 (7th Cir. 2003); *Ooley v. Schwitzer Div., Household Mfg. Inc.*, 961 F.2d 1293, 1302 (7th Cir.1992); *see also, e.g., Filippo v. Northern Indiana Public Serv. Corp.,*141 F.3d 744, 748-49 (7th Cir. 1998); *Crider v. Spectrulite Consortium, Inc.,* 130 F.3d 1238, 1243 (7th Cir.1997). When examined in this case, the record here contains no evidence that the Union breached its duty through arbitrary decisionmaking, discriminatory decisionmaking or by otherwise acting in bad faith.

"Whether or not a union's actions are discriminatory or in bad faith calls for a subjective inquiry and requires proof that the union acted (or failed to act) due to an improper motive." *Neal,* 349 F.3d at 369. The record here is void of any evidence of any personal animosity between Vitatoe and Sullivan and no evidence of a discriminatory basis for the decision. There is likewise no evidence at all that the Union acted or, in this case, failed to act, with an improper motive as the basis for its decision.

As for whether the Union acted arbitrarily, this calls for an objective inquiry. *McLeod v.*

15

*Arrow Marine Transp., Inc.,* 258 F.3d 608, 613 (7th Cir.2001). "A union's actions are arbitrary only if the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Filippo,* 141 F.3d at 749 (internal quotation marks, citations, and ellipsis omitted); *see also Marquez v. Screen Actors Guild, Inc.,* 525 U.S. 33, 46 (1998); *McLeod,* 258 F.3d at 613. This is an "extremely deferential standard" that precludes the courts from "substitut[ing] their judgment for that of the union, even if, with the benefit of hindsight, it appears that the union could have made a better call." *Ooley,* 961 F.2d at 1302.

In this case, the highly deferential standard for showing arbitrary conduct as well as the sparsity of the evidence presented by Sullivan leads to a single conclusion and that is, that the Union was within its proper discretion to refuse to arbitrate Sullivan's grievance. The only evidence in the record is Vitatoe's affidavit wherein he avers that the decision not to pursue Sullivan's grievance through the arbitration process was made after a full and complete investigation into the facts – facts, which led Vitatoe to believe that the arbitration had virtually no chance of success. "...[T]he thoroughness of th[e] investigation depends on the particular case, and 'only an egregious disregard for the union members' rights constitutes a breach of the union's duty.' " *Garcia,* 58 F.3d at 1176, quoting *Castelli; see also Vaca,* 386 U.S. at 194-95, 87 S.Ct. at 919; *McLeod,* 258 F.3d at 613; *Filippo,* 141 F.3d at 749. Here, Sullivan has no evidence of any "egregious disregard" of his rights. He presents no evidence challenging the investigation made by the Union or calling into question the credibility of Vitatoe's affidavit wherein he states that he conducted a complete investigation of the grievance and decided not to arbitrate. It should hardly come as a shock to Sullivan given his vast record of attendance missteps as well as his other disciplinary issues that the Foundry maintained, in essence, a mountain of paperwork in support of his termination. Nevertheless,

Sullivan speculates in his deposition that the Union and the Foundry "must have" together acted improperly. Yet, this sort of speculation is a far cry from evidence showing irrational behavior by the Union. Rather, all of the admissible evidence points to the fact that the Union based its decision not to arbitrate the grievance solely on the investigation undertaken by Vitatoe. And, since a union has no obligation to take every grievance to arbitration, *Neal,* 349 F.3d at 369, it cannot be said that the Union acted arbitrarily when it decided not to pursue Sullivan's grievance further. Accordingly, the Union's Motion for Summary Judgment on this claim is GRANTED.[11]

## CONCLUSION

Based on the foregoing, the Defendants' motions for summary judgment are GRANTED. The clerk shall enter judgment in favor of the Defendants.

Entered: This 6th day of June, 2006

s/ William C. Lee
United States District Court
Northern District of Indiana

---

[11] As noted at the outset of this section, if Sullivan's claim fails as to the Union, it necessarily fails as to the Foundry. Accordingly, the Foundry is entitled to summary judgment on any claim for breach of the CBA.